**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HOWARD RAY, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18 C 5283 |
| ) | |
| CITY OF CHICAGO and ) | |
| JOHN DOES 1-4, ) | |
| ) | |
| Defendants. ) | |

## ORDER ON CITY OF CHICAGO'S MOTION TO DISMISS

Howard Ray, Sr. has filed a *pro se* lawsuit against the City of Chicago and several "John Doe" Chicago police officers. In 2003, Ray's son DaShand Ray was killed during the tragic events at the E2 nightclub, when patrons, including DaShand, were unable to leave the building after a fire started and were killed from suffocation or crushing injuries. Ray, who like DaShand is African-American, alleges that Chicago police officers deliberately or recklessly prevented patrons from leaving and acted as they did because of the patrons' race. He also alleges that the police officers intended to deprive him of his familial relationship with DaShand, an allegation to which the Court will return momentarily.

In 2003, Ray and his wife filed a wrongful death lawsuit against the City, in their capacity as special administrators of DaShand's estate. What appears to be the core of Ray's present lawsuit involves the following allegations:

> 21. Upon information and belief, in the course of prosecuting [Plaintiff's] claim, Defendant, through employees, agents or contractors, unreasonably interfered with Plaintiff's ability to prosecute the lawsuit by

threatening and intimidating witnesses, including the individual who installed the security cameras at E2; confiscating evidence, including cash and camera equipment from the nightclub, producing different versions of what appears to be edited or otherwise doctored video from some of the surveillance cameras and only giving Plaintiff a version of the video that was very difficult to view or discern; and failing to investigate the misconduct of its employees at the nightclub.

22. Plaintiff did not have access to the full extent of Defendant's conduct until sometime in late 2017 or 2018, when it produced a copy of a DVD from some of the surveillance cameras that Plaintiff had not seen before.

23. Defendant's employees, including John Doe 1, John Doe 2, John Doe 3 and John Doe 4, conspired among themselves to deprive Plaintiff of his constitutional rights, i.e. to hinder the due course of justice by engaging in a cover-up of the true circumstances of DaShand's death and to cover up the fact that Chicago police officers prevented parents, friends and members of the public from going into the Nightclub's only exit and entrance stairway known by the general public, to rescue trapped patrons; and Chicago police officers prevented patrons from escaping or leaving the [E2] Nightclub building by crowding on to the only front door exit. As part of the cover up, Defendant falsely claimed that DaShand died because [E2] Nightclub allegedly did not obey a court order.

Compl. ¶¶ 21-23.

Ray asserts claims against the John Doe defendants for violation of due process and conspiracy to violate constitutional rights and against the City under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), alleging various policies that produced the alleged constitutional wrongs, and for indemnification of the individual officers under 745 ILCS 10/9-102. The City has moved to dismiss Ray's claims under Federal Rule of Civil Procedure 12(b)(6). The Court addresses the City's arguments in the present order.

Preliminary, however, the Court overrules Ray's contention that the City lacks standing to seek dismissal of the claims against the John Doe defendants. Because the City is a potential indemnitor of those defendants under section 9-102 (as it would be

2

even if Ray had not asserted a separate claim under that statute), it is potentially liable and thus has a sufficient interest in the outcome of those claims to be entitled to seek their dismissal.

1. First, the City argues that plaintiff's claims are time-barred. As Ray argues, however, affirmative defenses like the statute of limitations typically do not permit dismissal under Rule 12(b)(6). *See, e.g., Bausch v. Stryker Corp.*, 630 F3d 546, 561 (7th Cir. 2010). Dismissal under Rule 12(b)(6) on this basis is proper only if the complaint itself sets forth everything needed to establish the affirmative defense— including defeating any means of avoiding the defense, such as equitable tolling and equitable estoppel. *See, e.g., Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014); *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). This is not the case here. Ray alleges that the defendants concealed evidence that would have made a difference in his lawsuit and that this evidence did not surface until less than two years before he filed the present lawsuit. The City's limitations defense thus does not provide a basis for dismissal under Rule 12(b)(6).

2. Ray asserts a claim for violation of his due process right of association and companionship with DaShand, his son. Under controlling authority in this circuit, Ray may maintain such a claim only if he adequately alleges "intentional action by the state to interfere with a familial relationship." *Russ v. Watts*, 414 F.3d 783, 79 (7th Cir. 2005) (overruling *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984)). Ray has not plausibly alleged this. As noted earlier, Ray alleges that the actions of the Doe defendants "prevented parents, friends and members of the public from going into the Nightclub's only exit and entrance stairway known by the general public, to rescue

3

trapped patrons." Compl. ¶ 23. He also alleges that he "believes Defendants intended to deprive him of his protected relationship with DaShand." *Id.* ¶ 16. These allegations, however, are conclusory and unsupported, and they are insufficient to plausibly allege an intentional targeting of Ray's relationship with his son. And although Ray cites evidence, including a report by the City indicating that data "gives validity to the widely held belief [that] police officers have no regard for the sanctity of life when it comes to people of color" and that the City's police department is "not doing enough to combat racial bias" in its ranks, *id.* ¶ 24, these allegations, which concern racial bias generally, are not sufficient to push Ray's conclusory allegation about targeting his familial relationship over the line of plausibility. The Court therefore dismisses Ray's right of association claims.

3. Ray appears to have sufficiently alleged a due process claim regarding concealment of evidence to undermine his (and perhaps other) lawsuits filed against the City following the E2 tragedy, but he cannot pursue that claim under his complaint in its current form. When Ray asserted that claim, he did not do so on his own behalf but rather acted on behalf of his son's estate. Thus any claim for violation of due process that involves that lawsuit is also a claim that must be brought on behalf of the estate, not by Ray as an individual. Ray, who is not an attorney, cannot properly sue on a *pro se* basis as a representative of his son's estate; an attorney is required. *See, e.g., Malone v. Nielson*, 474 F.3d 934, 937 (7th Cir. 2007). The Court therefore dismisses this claim.

4. Because the discussion above disposes of all of Ray's constitutional claims, his *Monell* claim, which derives from the underlying constitutional claims, is likewise deficient.

4

## Conclusion

For the reasons stated above, the Court grants defendant City of Chicago's motion to dismiss [dkt. no. 18]. Unless plaintiff files, by 2/7/2019, a proposed amended complaint that sets forth a viable federal claim, the Court will enter judgment against him.

Date: January 7, 2018

_____
MATTHEW F. KENNELLY
United States District Judge